**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 2009-CT-01061-SCT**

*GARY ALLEN GLIDDEN*

*v.*

*STATE OF MISSISSIPPI*

**ON WRIT OF CERTIORARI**

| | |
|---|---|
| DATE OF JUDGMENT: | 12/18/2008 |
| TRIAL JUDGE: | HON. ROGER T. CLARK |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | OFFICE OF INDIGENT APPEALS BY: LESLIE S. LEE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: DEIRDRE MCCRORY |
| DISTRICT ATTORNEY: | CONO A. CARANNA, II |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 10/06/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Gary Allen Glidden was convicted of one count of possession of a controlled substance as defined by Mississippi Code Section 41-29-139(c) (Rev. 2009). The Circuit Court for the First Judicial District of Harrison County, Judge Roger T. Clark presiding, sentenced Glidden to serve a term of four years in the custody of the Mississippi Department of Corrections. Judge Clark also sentenced Glidden to serve his imprisonment as an habitual

offender under the provisions of Mississippi Code Section 99-19-81 (Rev. 2007). After the trial court entered an order denying Glidden's motion for a judgment notwithstanding the verdict, or in the alternative, for a new trial, Glidden perfected his appeal to us, and we assigned this case to the Court of Appeals. After consideration, the Court of Appeals affirmed the trial-court judgment. *Glidden v. State*, 2010 WL 3638768 (Miss. Ct. App. Sept. 21, 2010). We granted Glidden's petition for writ of certiorari. *Glidden v. State*, 58 So. 3d 693 (Miss. 2011). Finding that no reversible error occurred at trial, we affirm the judgment of the Court of Appeals, which affirmed the judgment of conviction and sentence of the Circuit Court for the First Judicial District of Harrison County.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2.     We set out here the facts relevant to today's discussion. Some of the facts are gleaned from the opinion of the Court of Appeals. *Glidden*, 2010 WL 3638768, *1, ¶¶2-3. We will include additional facts found in the record as warranted by our discussion.

¶3.     On September 18, 2006, Gary Glidden was installing an air conditioner in the home of Joseph Buckner. While he was working, Glidden received an emergency service call from a customer located a few blocks away. Glidden had no transportation, and Buckner allowed Glidden to borrow his pickup truck to respond to the service call.

¶4.     The route Glidden traveled on his return to Buckner's house caused him to come in contact with Sergeant Greg Goodman and Detective Steve Compston, both of the Gulfport Police Department, who were conducting traffic stops in the City of Gulfport. Sergeant Goodman noticed a truck turning without using a turn signal. Detective Compston pulled the truck over to the side of the road. As the policemen exited their car, the driver of the truck

2

(later identified as Glidden) exited the truck and walked to the rear of the truck. Sergeant Goodman walked to the passenger-side door and peered in the window to check for any other occupant. Sergeant Goodman immediately saw a large, clear, plastic bag on the driver's-side floorboard containing what Sergeant Goodman believed was marihuana. Sergeant Goodman testified that "not even an inch" of the bag was under the driver's seat, and the bag was in plain view. Detective Compston arrested Glidden. Both Sergeant Goodman and Detective Compston testified that they neither moved nor touched the plastic bag until after it was photographed. The bag was tested at the local crime laboratory. A forensic analyst from the Mississippi Crime Laboratory testified that the bag contained 450 grams of marihuana. No other drug paraphernalia was found on Glidden or in the truck. In his testimony, Compston confirmed that he had called in the tag number of the truck and that it was registered to Joseph Buckner.

¶5. At trial, Glidden testified that he had borrowed Buckner's truck, that he had possession of the truck for only thirty minutes, and that the bag of marihuana was not on the floorboard while he was driving. He stated that, had the bag of marihuana been under his feet, he physically would not have been able to drive. According to Glidden, he knew Buckner only as his customer from the air-conditioning business and would never have gotten into the truck if he had known drugs were in the vehicle. Throughout his testimony, Glidden maintained that he was completely unaware that drugs were in the pickup and that they must have been hidden under the seat and must have slid out when he applied the brakes upon being stopped by the police officers.

3

¶6.    After the presentation of all the evidence, the reading of the instructions to the jury, and counsel's closing arguments, the jury retired to deliberate,[1] returning in due course with its verdict of guilty as charged. Judge Clark entered a judgment consistent with the verdict. At a subsequent sentencing hearing, Judge Clark sentenced Glidden to serve a term of four years imprisonment in the custody of the Mississippi Department of Corrections as a habitual offender under Mississippi Code Section 99-19-81 (Rev. 2007). Upon Glidden's filing of the customary post-trial motions, Judge Clark entered an order denying these post-trial motions, and Glidden perfected his appeal. This Court assigned Glidden's case to the Court of Appeals.

## PROCEEDINGS IN THE COURT OF APPEALS

¶7.    Before the Court of Appeals, Glidden raised the following three issues, which we have restated for the sake of today's discussion: Whether the trial court erred (1) in denying the motion for a judgment notwithstanding the verdict due to the insufficiency of the evidence to support the conviction, (2) in denying his proffered circumstantial-evidence instructions, and (3) in excluding evidence concerning a pending drug indictment against the owner of the truck Glidden was driving on the day of his arrest, thus depriving Glidden of the opportunity to present one of his defenses to the indictment. ***Glidden***, 2010 WL 3638768, at **1-3, ¶¶4-9.

---

[1]Of course, when the jury commenced its deliberations, the members of the jury had their recall of the testimony, the exhibits offered and received into evidence (including the photographs of the bag of marihuana as found on the driver's side floorboard of the truck, according to the testimony of the police officers who conducted the stop of Glidden on the day in question), and the written jury instructions given by the trial judge.

4

¶8. A unanimous Court of Appeals found no merit in Glidden's arguments. After the Court of Appeals denied Glidden's motion for rehearing, Glidden filed a petition for writ of certiorari, asking us to consider the same three issues which had been considered by the Court of Appeals. We granted certiorari. *Glidden v. State*, 58 So. 3d 693 (Miss. 2011).

## DISCUSSION

¶9. In granting certiorari, we have the authority to "limit the question on review." Miss. R. App. P. 17(h). *Brown v. State*, 39 So. 3d 890, 895 (Miss. 2010) (citing *Brown v. State*, 986 So. 2d 270, 272 n.1 (Miss. 2008); *Dora v. State*, 986 So. 2d 917, 921 n.8 (Miss. 2008)). As will be noted, based on an evenly divided Court in today's case, our main concern in granting certiorari was whether the evidence presented at trial was legally sufficient to support the verdict finding Glidden guilty of the crime of possession of a controlled substance. A plurality of this Court finds the evidence was legally sufficient to support the verdict.

¶10. Before proceeding with our discussion on the main issue before us, we note briefly that, as to Glidden's remaining issues, we find the Court of Appeals very ably discussed these issues, correctly applying the law to the facts as revealed in the record. Accordingly, we adopt the Court of Appeals' analyses on Issues II and III, and we find these issues to be without merit. *Glidden*, 2010 WL 3638768, at \*\*2-3, ¶¶ 6-9.

> **WHETHER THE TRIAL COURT ERRED IN DENYING GLIDDEN'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT DUE TO THE LEGAL INSUFFICIENCY OF THE EVIDENCE.**

¶11. Thus, the issue we now discuss is whether, in this constructive-possession drug case, the evidence was legally sufficient to support the verdict. The dissent concludes that the

5

evidence showed only that Glidden was in the vicinity of the nearly one pound of marihuana[2] in the pick-up truck he was driving, and nothing else. In other words, the dissent opines that there was "no independent incriminating evidence" to establish that Glidden constructively possessed the large, clear, plastic bag containing nearly one pound of marihuana found on the floorboard, almost completely exposed directly under the driver's seat of the truck. We respectfully disagree.

¶12.    In today's case, the State was burdened with proving beyond a reasonable doubt that Glidden knowingly, willfully, unlawfully, and feloniously possessed the subject marihuana. When, as here, a defendant does not physically possess the illegal drugs, the State must prove constructive possession of the drugs in order to prevail. We recently stated:

> To support a conviction for possession of a controlled substance, "there must be sufficient facts to warrant a finding that [the] defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it." ***Wall v. State***, 718 So. 2d 1107, 1111 (Miss. 1998) (quoting ***Curry v. State***, 249 So. 2d 414, 416 (Miss. 1971)).

***McClellan v. State***, 34 So. 3d 548, 553 (Miss. 2010).

¶13.    Juries are not required to view these cases in a vacuum. The jurors are not required to hang their common sense on the coat-rack as they enter the courtroom for jury service. As is done on multiple occasions daily in the trial courts of our state, Judge Clark in today's case appropriately instructed the jury on its solemn responsibilities in the case of ***State of Mississippi v. Gary Allen Glidden***. Here are but a few examples of Judge Clark's instructions to the jury:

---

[2]One pound contains 454 grams. This large bag contained an amount of marihuana just four grams shy of one pound.

6

As sole judges of the facts in this case, your exclusive province is to determine what weight and what credibility will be assigned the testimony and supporting evidence of each witness in this case. *You are required and expected to use your good common sense and sound honest judgment in considering and weighing the testimony of each witness who has testified in this case.*

The evidence which you are to consider consists of the testimony and statements of the witnesses and *the exhibits offered and received. You are also permitted to draw such reasonable inferences from the evidence as seem justified in the light of your own experience.*

(Jury Instruction C-1) (emphasis added). The jury also was instructed that the burden was on the State to prove beyond a reasonable doubt that, *inter alia*, Glidden "did knowingly, wilfully, unlawfully and feloniously possess 250 grams or more but less than 500 grams of Marijuana."[3] (Jury Instruction S-1B.) The Court also gave Instruction S-2, which stated:

The Court instructs the Jury that to constitute possession as applied to this case, it is not necessary that the State prove actual physical possession; it is sufficient if the State establishes that the substance involved was subject to the defendant's dominion and control, and that he was aware or reasonably should have been aware of its presence and character.[4]

Finally, Judge Clark also granted Glidden's proposed Instruction D-7, which stated:

The Court instructs the jury that a reasonable doubt may arise from the whole of the evidence, the conflict of the evidence, the lack of evidence, or the insufficiency of the evidence but, however it arises, if it arises, it is your sworn duty to find the defendant "not guilty."

¶14.    Once the State rested its case-in-chief, Judge Clark granted Glidden's motion for a directed verdict on the issue of possession with intent to sell or distribute, over the vigorous

---

[3] *See* Mississippi Code Section 41-29-139(c)(2)(D) (Rev. 2009). Timothy Gross, a forensic scientist with the Mississippi Crime Laboratory (Gulfport Regional Laboratory), testified that the substance in the evidence bag presented to him for testing (which was shown by independent evidence to be the bag recovered from the truck Glidden was driving) was in fact marihuana, weighing 450.0 grams.

[4] Defense counsel had no objection to this instruction.

7

objection of the State, and the case went forward solely on the issue of simple possession. During his case-in-chief, Glidden, over objection of the State, was able to get before the jury, via the testimony of Deputy Circuit Clerk Paula Olson, that a man named Joseph Buckner had nine prior convictions for sale of a controlled substance. Over the objection of the State, the trial judge allowed nine certified copies of the sentencing orders to be received into evidence as defendant's collective exhibit number one.[5] Thus, Glidden was able to argue his theory to the jury that the 450 grams of marihuana found in Buckner's pickup truck that Glidden claimed to have borrowed belonged to a nine-time convicted drug dealer, Joseph Buckner.[6]

¶15.    Glidden was proven to be an habitual offender under Mississippi Code Section 99-19-81 (Rev. 2007);[7] and under Mississippi Code Section 41-29-139(c)(2)(D) (Rev. 2009), Glidden was facing the possibility of an eight-year sentence without parole. Instead, Judge Clark, in essence, applied the proportionality test as sanctioned by this Court in *Clowers v. State*, 522 So. 2d 762, 765 (Miss. 1988), and sentenced Glidden to a term of four years in the custody of the Mississippi Department of Corrections without the benefit of parole or probation.

---

[5] Olson admitted that she did not know whether Joseph Buckner, who had been convicted in Harrison County Circuit Court for these drug sales, was the same Joseph Buckner who owned the pickup truck being driven by Glidden on the day he was stopped by law enforcement officials.

[6] Before trial, the State had moved to exclude evidence of Buckner's prior convictions, but the trial judge had denied the State's motion.

[7] Glidden's prior convictions consisted of burglary of a building for theft (two separate convictions), possession of Lysergic Acid Diethylamide (LSD), and felony escape.

¶16.    Judge Clark fulfilled his solemn responsibility to afford Glidden the constitutionally fair trial to which he was entitled.  The jury had before it Glidden's theory that the 450 grams of marihuana were not his, but Buckner's, someone who had multiple convictions for the sale of drugs. Also, due to Judge Clark's partial grant of Glidden's motion for a directed verdict, Glidden's exposure was dramatically reduced from the possibility of a thirty-year sentence[8] as an habitual offender, to a possible maximum sentence of eight years, and yet he received only a four-year sentence.

¶17.    Additionally, if one "reads between the lines" as to what Glidden and his lawyer were saying before the jury, one reasonably could infer that Glidden was insinuating that police officers either had planted the marihuana in the pickup truck, or at the very least, had manipulated the location of the marihuana in the pickup before photographing the bag of marihuana in the pickup after Glidden had exited his vehicle to meet Detective Compston at the rear of the pickup. On direct examination, when describing the scene where he was stopped by the police, Glidden stated:

> And it wasn't like that when I was driving the truck. It's a very little truck. My feet won't even fit in there.  I would be stepping all over that.  I don't know if it came out when I hit the brakes. It might have come out then, but I did see one of the officers on the passenger side with a bag of pot, and there were six more police cars there, and they were passing it around. It got back in the truck. That's the only way. If I would have saw something like that, I would have never got in the truck, point blank. But it was not like that.

During closing arguments, defense counsel stated to the jury:

> How many time[s] have you been driving down the street and saw someone pulled over on the side and saw one car? How many times? Just on a traffic? There is usually two, sometimes three, sometimes more than that.   One

---

[8] *See* Miss. Code Ann. § 41-29-139(b)(1) (Rev. 2009).

unmarked car, and they have got a pound of marijuana and you think these two officers are the only ones there.

It's not a rabbit hole. It's what we don't know. We don't know what other officers were present. We don't know what other officers were doing. He says he took the photograph, but did he have the camera on him or did he walk back to the patrol car to get it, and what happened during that period of time. This is not as simple as the state would have you think.

¶18. Sergeant Goodman testified that, once the stop of the pickup truck had been accomplished, he and Detective Compston had exited their vehicle, and Glidden had exited the pickup from the driver's side, meeting Compston at the rear of the pickup. Goodman continued to the passenger side of the truck, which Glidden had parked on the left-hand side of the street. There was no one else in the pickup. Both the passenger-door window and the driver's-side-door window were down. Sergeant Goodman had a clear view of the interior of the pickup by simply standing outside the passenger door and looking inside. Sergeant Goodman immediately noticed a zip-lock bag containing what he believed to be marihuana on the driver's-side floorboard. Goodman testified that "not even an inch of [the bag] was under the driver's seat," meaning that most of the bag of marihuana was in plain view. Two photographs entered into evidence clearly depict the large bag of marihuana on the floorboard of the pickup, and Sergeant Goodman testified the photographs were taken prior to the bag of marihuana being moved.

¶19. Detective Compston, who was accepted without objection as an expert in the field of narcotics investigation, also saw the bag of marihuana in the pickup. Compston actually took the photographs entered into evidence. During the re-cross examination of Compston by defense counsel, Compston testified that the zip-lock bag was not fingerprinted because "[i]n

10

my experience we have had very poor results receiving fingerprints off of a texture like this."

Compston clarified that the texture to which he was referring was a plastic bag, such as the

zip-lock bag containing the marihuana. Notwithstanding this testimony concerning the

difficulty in lifting identifiable fingerprints off plastic, defense counsel stated during closing

arguments:

> Couple other things I thought curious. Why didn't they try and take fingerprints off this. It's a heavy plastic bag. Everything we've learned about forensic is I just left my DNA all over that thing. They can do wonders now. Why is it they didn't do it? Because the only print they were going to find on there were police officers. Isn't that a possibility?

¶20. This Court once again had the occasion to address constructive possession in *Hudson*

*v. State,* 30 So. 3d 1199, 1203-04 (Miss. 2010). In *Hudson*, we stated:

> In other words, "[t]he law states that actual possession is not needed, that constructive possession will do." *Smith v. State*, 839 So. 2d 489, 497 (Miss. 2003). Nevertheless, the "awareness" and "conscious intent to possess" elements apply to both actual and constructive possession. The only difference is that, with actual possession, the drug is actually found on the defendant's person (*i.e.*, in his hands, mouth, pockets, etc.), whereas, with constructive possession, the drug is simply found "near" the defendant's person in a place over which the defendant exercises dominion or control. Thus, "[t]he State ha[s] to prove that [the defendant] was aware of the cocaine and intentionally, *but not necessarily physically*, possessed it." *Id.* "[T]o test whether the prosecution met this standard of proof in individual cases[,] each case must be viewed in light of its individual facts and circumstances[.]"

*Hudson,* 30 So. 3d at 1203-04 (citations omitted) (emphasis in original).

¶21. As already mentioned, in deliberating on its verdict, the jury had every right to apply

common sense, common experience, and sound honest judgment in considering and

weighing the testimony of the witnesses and the exhibits received into evidence. Unlike this

Court, the jury had the opportunity, not only to hear Glidden's testimony, but also to observe

11

Glidden's demeanor. In appropriately applying the jury instructions given by the trial judge to the evidence in today's case, the jury was more than justified in finding Glidden guilty of possession of marihuana. We state again, for the sake of emphasis, that the jury was properly instructed by the trial judge, *inter alia*, that the jury's "exclusive province" was to decide the weight and credibility to be assigned to the testimony of each witness. The jurors were informed that they were "required and expected" to use their "good common sense and sound honest judgment" in weighing the testimony of the witnesses who testified in the case. Finally, and most importantly, the jury was informed that it was "permitted to draw such reasonable inferences from the evidence as seem justified *in light of your own experience*." (Emphasis added.) The jury had every right to consider all the evidence and conclude that Glidden was not telling the truth when he testified he had no idea the marihuana was in the truck he had been driving for thirty minutes.

¶22. In *Dilworth v. State*, 909 So. 2d 731, 736 (Miss. 2005), this Court once again reiterated the familiar test for appellate review of a criminal conviction when assailed on a claim of insufficient evidence to support the verdict:

> Should the facts and inferences considered in a challenge to the sufficiency of the evidence 'point in favor of the defendant on any element of the offense with sufficient force that reasonable [jurors] could not have found beyond a reasonable doubt that the defendant was guilty,' the proper remedy is for the appellate court to reverse and render [, i.e. reverse and discharge]. *Edwards v. State*, 469 So. 2d 68, 70 (Miss. 1985) (citing *May v. State*, 460 So. 2d 778, 781 (Miss. 1984); *see also* *Dycus v. State*, 875 So. 2d 140, 164 (Miss. 2004). However, if a review of the evidence reveals that it is of such quality and weight that, 'having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded [jurors] in the exercise of impartial judgment might reach different conclusions on every element of the offense,' the evidence will be deemed to have been sufficient.

12

***Dilworth***, 909 So. 2d at 736 (quoting ***Bush v. State***, 895 So. 2d 836, 843 (Miss. 2005)).

*See also* ***Hudson***, 30 So. 3d at 1203.

¶23. This was a classic jury case – Glidden's testimony versus the State's testimony and supporting evidence, i.e., the photographs of the bag of marihuana in the location where police officers testified the marihuana was found at the time they stopped the truck Glidden was driving. Unfortunately for Glidden, the jury resolved these issues adversely to him. But the jury verdict was supported by legally sufficient evidence such that, based on our standard of review, it is beyond the power and authority of this Court to disturb on appeal.

**CONCLUSION**

¶24. Based on today's discussion, the judgment of the Court of Appeals, which affirmed the Harrison County Circuit Court's judgment of conviction for possession of a controlled substance and sentence of four years as an habitual offender in the custody of the Mississippi Department of Corrections, is affirmed.

¶25. **CONVICTION OF POSSESSION OF A CONTROLLED SUBSTANCE AND SENTENCE OF FOUR (4) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AS A HABITUAL OFFENDER, WITHOUT THE ELIGIBILITY FOR PAROLE OR PROBATION, AFFIRMED.**

**RANDOLPH, LAMAR AND PIERCE, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., DICKINSON, P.J., AND CHANDLER, J. KING, J., NOT PARTICIPATING.**

**KITCHENS, JUSTICE, DISSENTING:**

¶26. As a matter of law, proximity alone is insufficient to show constructive possession, without additional incriminating circumstances. ***Curry v. State***, 249 So. 2d 414, 416 (Miss.

13

1971). Because the plurality's conclusion is inconsistent with this well-settled principle, I respectfully dissent.

¶27. There is no dispute that, because Glidden did not physically possess the marihuana, he was tried and convicted under a theory of constructive possession. Where, as here, the contraband is found in a place not owned by the accused, physical proximity alone is insufficient, as a matter of law, to sustain a finding of constructive possession. *Cunningham v. State*, 583 So. 2d 960, 962 (Miss. 1991). "Proximity is usually an essential element, but by itself is not adequate in the absence of other incriminating circumstances." *Curry*, 249 So. 2d at 416. The State must put forth sufficient evidence to prove that the defendant exercised dominion and control over the contraband. *Jackson v. State*, 689 So. 2d 760, 767 (Miss. 1997) (citations omitted). If the State cannot provide evidence, in addition to proximity, that connects the defendant to the contraband, the accused is entitled to acquittal. *Cunningham*, 583 So. 2d at 962 (citations omitted).

¶28. The Court of Appeals recognized that the mere presence of the marihuana in the vehicle was not sufficient to sustain Glidden's conviction, but found that the requirement for additional evidence was satisfied by the testimony presented at trial. *Glidden*, 2010 WL 3638768, at *2. In reaching its decision, the Court of Appeals reasoned:

> Glidden had been driving the truck for approximately thirty minutes with a large bag of marijuana directly under his feet. According to the testimony of both Detective Compston and Sergeant Goodman, the clear plastic bag was on the driver's side floorboard and was immediately visible through the truck window. Glidden admitted that the truck was small and that a bag that large would have been easily seen by him. From the evidence presented, reasonable jurors could have concluded that Glidden was guilty of possession of a controlled substance.

14

*Id.* In other words, the appeals court surmised that there was sufficient evidence that Glidden must have seen the bag of marihuana on the floorboard despite his repeated insistence that he had not seen the drug while he was driving the truck, and that it may have come from under the seat when he applied the brakes.

¶29. This, however, cannot provide sufficient evidence of "other incriminating circumstances." *Curry*, 249 So. 2d at 416. Even if we could ascertain from the record precisely where the drug was located while Glidden was driving the truck, or whether he should have noticed the plastic bag, there still would be a lack of evidence to support Glidden's conviction. As this Court stated in *Ferrell v. State*, 649 So. 2d 831, 835 (Miss. 1995), "the State must show additional circumstances which are actually incriminating in order to establish constructive possession." "There must be sufficient facts to warrant a finding that the defendant was aware of the presence and character of the particular substance *and* was intentionally and consciously in possession of it." *Curry*, 249 So. 2d at 416.

¶30. The plurality reasons that "[t]he jury had every right to consider all the evidence and conclude that Glidden was not telling the truth when he testified he had no idea the marihuana was in the truck he had been driving for thirty minutes." Plur. Op. at ¶ 21. Thus, the opinion ascribes significance to whether Glidden was able to see the marihuana in the borrowed vehicle and concludes that he must have noticed it. But what if he did? It is not illegal to *see* contraband, or even to be in close proximity to it. To observe an illegal commodity is not to possess it, in the absence of evidence that the observer did more than merely look at the contraband; there must be some articulable indicia of ownership and/or control. Here there is no such evidence, save and except the plurality's suspicion, which

15

apparently is born of its "common sense" analysis of nonexistent proof that Glidden criminally possessed the marihuana in Buckner's pickup. It simply is not against the law for one person to look at an illegal item that is in another person's truck; and even if he lies about whether he saw it, his falsehood provides no evidence of criminal possession. In sum, it just does not matter whether Glidden was aware of the marihuana's presence before it was discovered by the arresting officers.

¶31.    In *Ferrell*, the defendant was pulled over while operating a vehicle that he did not own, but of which he had been in possession for fifteen hours. *Id.* Ferrell was convicted under the theory of constructive possession after cocaine was found in a matchbox located next to the driver's seat. *Id.* On appeal, this Court reversed Ferrell's conviction and sentence, holding that "[t]he circumstances in this case in no way appear incriminating. No drug paraphernalia was found in the car, Ferrell was not on drugs at the time he was arrested, and his fingerprints were not found on the matchbox." *Id.* Further, "Ferrell's possession of the car for a mere fifteen hours does not qualify as an incriminating circumstance." *Id.*

¶32.    More recently, in *Blissett v. State*, 754 So. 2d 1241, 1244 (Miss. 2000), this Court upheld a finding of constructive possession where the evidence, in addition to proximity, strongly supported an inference that the accused was both aware of the presence of the marihuana in the vehicle and intentionally in possession of it. In *Blissett*, the defendant was convicted of possession after a large amount of marihuana was found in the rental car he was driving. *Id.* at 1243. On appeal, the Court held that the finding of constructive possession was justified, stating that "the arresting officer . . . testified to smelling a strong, overpowering odor of unburned marijuana as he approached the vehicle and that air

16

fresheners were scattered throughout the vehicle." *Id.* at 1244. The Court also found that "Blissett's nervous demeanor at the time of the stop was inconsistent with a lack of knowledge of marijuana in the car." *Id.*

¶33. The kinds of incriminating circumstances that warranted a finding of constructive possession in *Blissett* are absent in the case at hand. *Id.* at 1243. Unlike *Blissett*, there was nothing, such as an odor, to alert Glidden to the presence of the marihuana in the truck. In this case, unlike *Blissett*, it is completely plausible that Glidden had driven the truck for a short time without any indication that the drug was in the vehicle. Also, unlike *Blissett*, there was no testimony that Glidden had acted in any way that was inconsistent with his assertion that he was unaware the marihuana was in the vehicle. *Id.* At trial, Glidden consistently maintained that he never saw the ziplock bag. In fact, he insisted that, had it been in the position in which the officers recalled seeing it in the stopped vehicle, he could not have driven the truck.

¶34. The facts of this case are analogous to those in *Ferrell*, 649 So. 2d at 835, as the only incriminating evidence established at trial was that Glidden was in the vicinity of the marihuana. Here, as in *Ferrell*, the State presented no independent incriminating evidence. No drug paraphernalia was found in the pickup or on Glidden's person, and there was no indication from his behavior that he was on drugs. The truck belonged to a customer of Glidden, and he had possession of it for about thirty minutes while he was making an emergency service call that he had not expected to occur.

¶35. As a matter of law, constructive possession is not established where "the only evidence connecting the defendant to the controlled substance was his presence in the car

17

where the substance was found." ***Dixon v. State***, 953 So. 2d 1108, 1115 (Miss. 2007) (citing ***Jones v. State***, 693 So. 2d 375, 377 (Miss. 1997)). Should the plurality's contrary holding attain force-of-law status in future cases, borrowing a vehicle will become a very risky enterprise in the State of Mississippi.

¶36. While the plurality opinion recognizes that Glidden was convicted under a theory of constructive possession, it stops short of analyzing our well-established law on that issue and fails to point to additional incriminating evidence that might support a conviction. However, the plurality quotes Instruction S-2, which informed the jury that constructive possession could be established if the defendant "should have been aware" of the drug's presence and character. This suggests that we are crafting a new legal standard, because, notwithstanding the defendant's lack of objection, Instruction S-2 is not a correct statement of applicable law. *See* Miss. Model Jury Instructions: Criminal § 3:21 (2010) ("A person has constructive possession when he or she lacks actual possession of the thing or object but knowingly has both the power and the intention, at a given time, to exercise control or dominion over the thing or object, either directly or through another person."). What a defendant *should have known* may be sufficient knowledge for civil liability; but this Court has never held that it is sufficient to prove a defendant guilty of drug possession. *See e.g.*, ***Hyundai v. Applewhite***, 53 So. 3d 749, 759 (Miss. 2011) ("To support a defective design claim, the plaintiff must prove that . . . '[t]he manufacturer or seller knew, or in light of reasonably available knowledge or in the exercise of reasonable care *should have known*, about the danger that caused the damage for which recovery is sought . . . .'" (emphasis added) (quoting Miss. Code Ann. § 11-1-63(f)(i) (Rev. 2002)).

¶37. In cases where contraband is found on premises not owned by the defendant , the State cannot meet its burden of proof by relying on proximity alone. *Dixon*, 953 So. 2d at 111. The mere presence of the marihuana in the truck, absent "other incriminating circumstances," is insufficient to sustain Glidden's conviction. Because there is no additional evidence in the record to support a finding of constructive possession, and the plurality cites none, we should reverse both the Court of Appeals and the Circuit Court of the First Judicial District of Harrison County and render judgment in favor of Glidden.

**WALLER, C.J., DICKINSON, P.J., AND CHANDLER, J., JOIN THIS OPINION.**